UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VICTOR ANDERSON, | : | |
| Plaintiff, | : | CASE NO. 3:19-CV-288 (MPS) |
| | : | |
| v. | : | |
| | : | |
| LIEUTENANT MATIAS, et al., | : | |
| Defendants. | : | April 16, 2019 |

## INITIAL REVIEW ORDER

On February 27, 2019, the plaintiff, Victor Anderson, a *pro se* inmate currently confined at the MacDougall-Walker Correctional Institution in Suffield, Connecticut, brought a civil rights action under 42 U.S.C. § 1983 against Lieutenant Matias and five other unidentified Department of Correction ("DOC") officials in their individual capacities for damages and declaratory relief. Compl. (ECF No. 1). He claims that the defendants violated his rights under the Eighth Amendment to the United States Constitution. *Id.* at 2. He is also raising state law claims of assault, battery, and spoliation of evidence against the defendants. *Id.* at ¶¶ 25-26. On March 6, 2019, Magistrate Judge William I. Garfinkel granted the plaintiff's motion to proceed *in forma pauperis*. See Order No. 6. For the following reasons, the complaint is dismissed in part.

I.  Standard of Review

Under 28 U.S.C. § 1915A, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims

and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Bell Atlantic*, 550 U.S. at 556). Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

II. <u>Factual Allegations</u>

On November 19, 2016, at approximately 6:14 a.m., the plaintiff became involved in an altercation with another inmate at the Hartford Correctional Center, which prompted staff to call a "Code Blue." Compl. ¶ 8. The defendants responded to the area but paused at the door to the plaintiff's wing, which was closed. *Id.* at ¶¶ 9-11. At that moment, the plaintiff pushed the other inmate away in an attempt to end the altercation. *Id.* at ¶ 10. When the door to the wing opened, Lieutenant Matias entered the unit and deployed chemical agent to the left side of the plaintiff's face. *Id.* at ¶ 11. The plaintiff then turned to his right and sat down "in a viable position" with his legs extended and crossed and his hands behind his back, facing away from Matias. *Id.* Matias continued to deploy chemical agent on the back of the plaintiff's head for approximately fifteen

seconds. *Id.* at ¶ 12. At no time did any of the defendants order the plaintiff to stop fighting or assume a particular position. *Id.*

After Matias finished deploying chemical agent, one of the defendants ordered the plaintiff to roll over onto his stomach with his hands behind his back. Compl. ¶ 13. The plaintiff complied with the order, and one of the defendants handcuffed him. *Id.* The defendants first removed the other inmate from the area and then ordered the plaintiff to stand and walk to the medical unit. *Id.* at ¶ 14.

When he arrived at the medical unit, medical staff removed the chemical agent from his face, thereby relieving the burning pain in his eyes and his shortness of breath. Compl. ¶ 15. The plaintiff was then brought to another room and held under a stream of water. *Id.* at ¶ 16. The water "reactivated" the chemical agent causing the plaintiff to again experience difficulty breathing. *Id.* The plaintiff tried to pull his face away from the stream to catch his breath, but the official who was holding his head would not let him move. *Id.* at ¶ 17. The plaintiff was kept under running water for approximately fifteen seconds, which was long enough to "reactivate" the chemical agent but not long enough for adequate decontamination. *Id.* He was then brought to a restrictive housing unit ("RHU") for a strip search. *Id.* at ¶ 18.

After completing the strip search, officers placed the plaintiff in a cell without permitting him to shower to fully decontaminate. Compl. ¶ 19. The plaintiff was not permitted to shower until two days later.[1] *Id.*

---

[1] The plaintiff alleges that he was not permitted to shower until "Monday evening" but does not specify a date or the amount of time that passed between the altercation and the shower. The Court takes judicial notice that November 19, 2016, the date of the altercation, was a Saturday, and thus, the plaintiff was permitted to shower the following Monday, two days later.

3

The plaintiff spent seven days in the RHU without shoes or a change of clothes. Compl. ¶ 20. He was not allowed to change his bed linens and, thus, was forced to sleep in the same linens while still covered in the chemical agent that Matias had deployed on him. *Id.* The plaintiff was released from the RHU on November 26, 2016, but he did not receive his property or an opportunity to shower until December 3, 2016. *Id.* at ¶ 21. While in the RHU, he continued to experience difficulty breathing. *Id.*

III. <u>Analysis</u>

The plaintiff claims that the defendants violated his Eighth Amendment protection against cruel and unusual punishment by subjecting him to excessive force and/or failing to report staff misconduct during the altercation. *See* Compl. ¶ 23. However, upon further review, the Court concludes that the Eighth Amendment does not apply in this case because the plaintiff was a pretrial detainee at the time of the incident, not a prisoner.[2] *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (pretrial detainee's claims challenging conditions of confinement governed by Due Process Clause of Fourteenth Amendment, not Eighth Amendment). Thus, the Court will analyze his excessive force claim under the Fourteenth Amendment. *See Brown v. Harrington*, No. 3:18-CV-2029 (KAD), 2019 WL 135654, at *2 (D. Conn. Jan. 8, 2019) (analyzing pretrial detainee's excessive force claim under Fourteenth Amendment). The plaintiff is also raising state law claims of assault, battery, and spoliation of evidence. The Court will permit his Fourteenth Amendment excessive force claim for damages to proceed

---

[2] State judicial records show that the plaintiff was arrested on November 15, 2016, four days before the alleged incident and convicted on December 11, 2018. *State v. Anderson*, No. HHB-CR16-0285533-T, judicial district of New Britain (Conn. Super. Ct. Nov. 15, 2016). Prior to that arrest, his last conviction was on October 7, 2015, which resulted in a four-month sentence. *State v. Anderson*, No. H15N-CR15-0279875-S, Geographical Area 15 at New Britain (Conn. Super. Ct. Sept. 18, 2015); *State v. Anderson*, No. H15N-CR14-0271331-S, Geographical Area 15 at New Britain (Conn. Super. Ct. Jan. 8, 2014).

against all defendants and his assault and battery claims to proceed against defendant Matias for damages.

A. Fourteenth Amendment

In order to state an excessive force claim under the Fourteenth Amendment, the plaintiff "'must show only that the force purposely or knowingly used against him was objectively unreasonable.'" *Fletcher v. City of New London*, No. 3:16-CV-241 (MPS), 2018 WL 4604306, at *10 (D. Conn. Sept. 25, 2018) (quoting *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015)). "'[O]bjective reasonableness turns on the facts and circumstances of each particular case.'" *Id.* (quoting *Kingsley*, 135 S. Ct. at 2473). In *Kingsley*, the United States Supreme Court identified several factors to consider in determining the reasonableness or unreasonableness of the force used:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

135 S. Ct. at 2473. The determination is made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with 20/20 vision of hindsight." *Id.*

Construed liberally, the plaintiff's complaint states a plausible excessive force claim against Lieutenant Matias, who sprayed chemical agent in his face and continued to do so for approximately fifteen seconds after the plaintiff had retreated to a compliant position. Aside from alleging their presence during the incident, however, the plaintiff has not alleged facts showing that any of the other defendants subjected him to excessive force. Although it is not entirely clear from the complaint how many of the other

defendants witnessed Matias' actions, the Court will permit the excessive force claim to proceed against the Doe defendants based on their failure to intervene.

It also appears from the complaint that the plaintiff may be attempting to raise a separate deliberate indifference to safety claim based on his confinement in the RHU for one week after the incident without being allowed to shower and fully decontaminate from the chemical agent. *See* Compl. ¶¶ 20-21. The inability to shower allegedly perpetuated his shortness of breath during that week. *See id.* at ¶ 21.

To state a claim that an official acted with deliberate indifference to his safety or subjected him to unconstitutional conditions of confinement, a pretrial detainee must allege facts showing that the challenged condition was "'sufficiently serious' – that is [it] 'pose[d] an unreasonable risk of serious damage to his health.'" *Rogers v. Faucher*, No. 3:18-CV-1809 (JCH), 2019 WL 1083690, at *4 (D. Conn. Mar. 7, 2019) (quoting *Darnell*, 849 F.3d at 30). He must also allege that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* (quoting *Darnell*, 849 F.3d at 35).

The complaint as written does not state a plausible Fourteenth Amendment claim based on the denial of showers while the plaintiff was confined in the RHU. It is not clear whether the plaintiff requested permission to shower from one or more of the defendants or who gave the order to place him in the RHU without access to a shower. Nor is it clear whether any defendant knew, or should have known, that he lacked access

to a shower. Thus, any additional Fourteenth Amendment claim based on the confinement in the RHU following the incident is dismissed subject to amendment.

B. State Law Claims

The plaintiff is also asserting state law claims of assault, battery, and spoliation of evidence against the defendants. Compl. ¶¶ 25-26. This Court can exercise supplemental jurisdiction over a state law claim if:

> (1) there is a claim arising under the federal constitution or federal laws; (2) the relationship between the federal claim and the state claim permits the conclusion that the entire action comprises but one constitutional case; (3) the federal claim has substance sufficient to confer subject matter jurisdiction on the court; and (4) the state and federal claims derive from a common nucleus of operative fact.

*Miller v. Lovett*, 879 F.2d 1066, 1071 (2d Cir. 1989), *abrogated on other grounds*, *Graham v. Connor*, 490 U.S. 386 (1989); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). In this case, the plaintiff has stated plausible assault and battery claims against Matias based on his excessive use of force on November 19, 2016. *See Germano v. Dzurenda*, No. 3:09-CV-1316 (SRU), 2011 WL 1214435, at *22 (D. Conn. Mar. 28, 2011) (defining civil assault as "the intentional causing of imminent apprehension of harmful or offensive contact with another" and battery as "intending to cause harmful or offensive contact with the person of the other or a third person . . ."). Because these claims arise from the same set of facts as his excessive force claim, the Court will exercise supplemental jurisdiction over the assault and battery claims and permit them to proceed against Matias for damages. Aside from failing to report the incident, however, there are no facts showing that any of the other defendants subjected the plaintiff to the use of force. Therefore, the assault and battery claims will proceed only against Matias.

The plaintiff also claims that the defendants committed "spoliation in violation of article twenty-nine of the Amendment to the Connecticut [C]onstitution." Compl. ¶ 29. The Court is aware of no such state constitutional provision. Spoliation refers to "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Taylor v. City of New York*, 293 F.R.D. 601, 609 (S.D.N.Y. 2013) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). A spoliation claim is most often raised in the context of discovery, and a district court may impose sanctions for the spoliation of evidence pursuant to Federal Rule of Civil Procedure 37. *See id.* A party seeking sanctions for the spoliation of evidence must show: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim . . . such that a reasonable trier of fact could find that it would support that claim." *Id.* (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)). Here, there are no facts alleged in the complaint which would support a claim for such a violation. Thus, the plaintiff's "spoliation" claim under the state constitution is dismissed.

C. Declaratory Relief

In addition to damages, the plaintiff seeks a declaration that Matias' use of excessive force and the Doe defendants' failure to report the incident violated his constitutional and state law rights. Compl. at 9. Declaratory relief serves to "settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of that right or a disturbance of the relationship." *Colabella v. American*

*Institute of Certified Public Accountants*, No. 10-CV-2291 (KAM) (ALC), 2011 WL 4532132, at *22 (E.D.N.Y. Sept. 28, 2011) (citations omitted). Declaratory relief operates prospectively to enable parties to adjudicate claims before either side suffers great damages. *See In re Combustion Equip. Assoc., Inc.*, 838 F.3d 35, 37 (2d Cir. 1998). In this case, the plaintiff's request for declaratory relief only concerns past actions. He has not identified any legal relationships or issues that require resolution by declaratory relief. *See Ward v. Thomas*, 207 F.3d 114, 119-20 (2d Cir. 2000) (Eleventh Amendment bars declaration that state violated federal law in the past). Therefore, his request for declaratory relief is dismissed.

**ORDERS**

In accordance with the foregoing analysis, the Court enters the following orders:

(1) The Fourteenth Amendment claim for excessive force may proceed against all defendants in their individual capacities for damages. The state law assault and battery claims may proceed against Matias in his individual capacity for damages. All other claims are dismissed. To the extent the plaintiff can allege facts showing that any of the defendants acted with deliberate indifference to his safety during his confinement in the RHU, he may file an amended complaint within thirty (30) days from the date of this Order. The amended complaint must contain specific facts showing each defendant's personal involvement in the alleged deprivation.

(2) The Clerk shall verify the current work address for Matias with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to Matias at the confirmed address within **twenty-one (21) days** of this Order, and report to the Court on the status of the waiver request on the **thirty-fifth (35) day**

after mailing. If Matias fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him, and he shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(3) Because the plaintiff has not identified the Doe defendants by their names, the Clerk is unable to effect service on them in their individual capacities. Within ninety (90) days from the date of this Order, the plaintiff must file a notice with the court identifying these defendants by their actual names. Failure to do so will result in the dismissal of these defendants from this action.

(4) The Clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

(5) Matias shall file his response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to him. If he chooses to file an answer, he shall admit or deny the allegations and respond to the cognizable claims recited above. He may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, pursuant to Fed. R. Civ. P. 26-37, shall be completed within **six months (180 days)** from the date of this Order. Discovery requests need not be filed with the Court.

(7) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a

dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. The plaintiff should also notify defendants or defense counsel of his new address.

It is so ordered.

Dated at Hartford, Connecticut this 16th day of April 2019.

                                                            /s/ MICHAEL P. SHEA
                                                            Michael P. Shea
                                                            United States District Judge